IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

QUICK FITTING, INC. :
    Plaintiff :
     :
v. : CA No. CA11-463
     :
ZHEJIANG XINGXIN AITE :
  COPPER MFG. CO. LTD., and :
  QUIFU XIE a/k/a "FRANK" XIE :
    Defendants :

FILED
OCT 1 2 2011
U.S. DISTRICT COURT
DISTRICT OF R.I.

### VERIFIED COMPLAINT

Plaintiff, Quick Fitting, Inc. ("Quick Fitting"), seeks compensatory and punitive damages, its attorneys' fees, and preliminary and permanent injunctive relief against the defendants based on their egregious conduct amounting to misappropriation of trade secrets, breach of contract, and unfair competition. The defendants have and are wrongfully quoting and selling customers of the plaintiff products that contain and were developed from plaintiff's intellectual property in order to covertly compete with the plaintiff, all of which is clearly and unambiguously prohibited by a series of written agreements between the parties.

### The Parties

1. Plaintiff, Quick Fitting, Inc. ("Quick Fitting") is a corporation organized and existing under the laws of the State of Rhode Island, with its principal place of business at 750 Narragansett Park Drive, East Providence, Rhode Island.

2. Defendant Zhejiang Xingxin Aite Copper Mfg. Co. Ltd. is a Chinese corporate entity organized and existing under the laws of China, with a principal place of business at Valve Industry Zone, Longxi Town, Yuhuan, Zhejiang, China PC 317609.

3. Zhejiang Xingxin Aite Copper Mfg. Co. Ltd. is commonly known in the

United States and does business in the United States under the trade name " XXAT," and shall be referred to herein as XXAT.

4. XXAT is a manufacturer and exporter of goods from China to the United States and many other nations.

5. Quifu Xie, also known as Frank Xie ("Xie"), is the president and manager of XXAT, and resides in China.

6. Xie exercises control over the decisions and operations of XXAT, and was responsible for the conduct and actions of XXAT as described herein.

## Jurisdiction and Venue

7. This Court has diversity jurisdiction over this matter under 28 U.S.C. §1332(a)(2) as it involves a citizen of this jurisdiction and citizens of a foreign state and exceeds the minimal jurisdictional amount of $75,000.00.

8. XXAT and Xie have substantial contacts with and within the State of Rhode Island so as to subject them to this Court's *in personam* jurisdiction, as both have travelled to and within this jurisdiction and conducted substantial business here.

9. Venue is appropriate in this Court under 28 U.S.C. §1391(a)(2), (a)(3), and 28 U.S.C. §1391(d).

## Facts Specific to All Counts

### The Plaintiff

10. The plaintiff is an inventor, manufacturer, and distributor of high-quality, push-to-connect plumbing fixtures including connectors and valves. Quick Fitting sells its products under the trademarked brands "Quick Fitting," "ProBite," "CoPro," and "Push Connect," among other names. Quick Fitting sells its products to wholesalers under these

and other brand names, and in retail stores and other locations throughout the United States and Canada including Mueller, HD Supply, Lowes Hardware, Wolverine, Hughes Supply, Ace Hardware, Handy Hardware, BMI Canada, Flair-it Sales, HD Supply, Home Depot, Sioux Chief, Global Industrial, Amazon.com, Tractor Supply, and others.

11. The plaintiff's technology is unique. It allows for the easy, permanent connection of pipes and connectors of copper, PVC, and other materials by hand, without the need for soldering or other heat or chemical applications. The plaintiff owns and has applied for multiple United States patents on the technology contained in its products.

12. In order to protect the substantial goodwill associated with its products and brands, Quick Fitting has secured trademark protection with the United States Patent and Trademark Office for brands including "Quick Fitting," "Pro Bite," and "Co Pro," among other terms.

13. Quick Fitting exercises great care to safeguard and maintain its patented technology, its trade secrets, use of its trademarks, and other confidential and proprietary information, in part by requiring each vendor and supplier with whom it works to execute restrictive covenants governing confidentiality, non-competition, and non-disclosure.

14. Quick Fitting carefully restricts the use of its patented technology, its trade secrets, its trademarks, and its confidential and proprietary information, and permits their use only under carefully controlled conditions pursuant to written agreement.

### Interaction of the Parties

15. In 2008, Quick Fitting and XXAT began discussing an agreement by which XXAT would manufacture and supply certain of Quick Fitting's products and component parts exclusively for Quick Fitting under conditions of confidentiality, non-disclosure, and

non-competition.

16. In order to further their discussions, on or about June 9, 2008, XXAT and Quick Fitting executed a written agreement titled Non-Disclosure Agreement (the "*June 2008 NDA*"), a true and accurate copy of which is attached to this *Verified Complaint* as Exhibit A.

17. Defendant Xie executed the agreement on behalf of XXAT.

18. The *June 2008 NDA* stated, in relevant part, that XXAT understood and desired:

> to receive certain trade secret, confidential and proprietary information (hereinafter collectively "Information") pertaining to Quick Fitting, Copro quick connection fittings, its manufacture, design, materials of construction, tactical or strategic planning relative to product development, potential markets, projections or manufacturing...

*June 2008 NDA*, Recital A.

19. The *June 2008 NDA* also stated that the disclosure of proprietary information from Quick Fitting to XXAT was to be "in strictest confidence," and that XXAT therefore agreed to:

> a. (1) Not disclose to any other person the Information and (2) use at least the same degree of care to maintain the Information secret as the Company uses in maintaining as secret its own secret information but always at least a reasonable degree of care;
>
> b. Use the Information only for the above purpose;
>    . . . .
>
> c. May not use Quick Fitting's disclosed materials, intellectual property, drawings, know-how, connection technology or any derivative thereof with the intention to advertise, manufacturer, sell, distribute, import or export a similar product, without the expressed written permission of Quick Fitting Inc.

*June 2008 NDA*, paragraphs 1(a)-(d).

20. Quick Fitting would develop and launch many new product initiatives that are protected and exclusive to Quick Fitting under the *June 2008 NDA* and subsequent executed agreements between Quick Fitting and XXAT.

21. Quick Fitting's goods are manufactured in materials such as plastics, aluminum, stainless steel, copper, and brass. In preparation for the manufacture by XXAT of certain of its goods and component parts, Quick Fitting expended considerable time and effort to design and develop molds and tooling with which the Quick Fitting parts would be manufactured and machined.

22. In December 2008, Quick Fitting and XXAT executed an agreement titled Exclusive Agreement for Molds and Tooling (the "*Mold Agreement*"), declaring that Quick Fitting owned "all rights and title to the molds, tooling and their respective products, which may not be used in the manufacture of similar products, for any other company." A true and accurate copy of the *Mold Agreement* is attached to this *Verified Complaint* as Exhibit B.

23. On or about April 1, 2009, Quick Fitting and XXAT entered an agreement titled License and Supply Agreement (the "*2009 License Agreement*"), licensing the use of Quick Fitting's patent and other intellectual property rights to XXAT "solely for use in connection with the manufacture of Finished Products on behalf of and for distribution by Quick Fitting...." A true and accurate copy of the *2009 License Agreement* is attached to this *Verified Complaint* as Exhibit C.

24. Upon information and belief, Frank Xie executed the *2009 License Agreement* on behalf of XXAT.

25. The *2009 License Agreement* contains the terms upon which Quick Fitting and XXAT agreed to do business at the time.

26. Quick Fitting received information that XXAT and Xie had approached and attempted to do business directly with one of Quick Fitting's customers. XXAT had covertly quoted lower alternative pricing against Quick Fitting, in a direct attempt to solicit a large customer away from Quick Fitting.

27. Quick Fitting discussed the information with Xie on behalf of XXAT. Xie repeatedly denied any involvement. Xie distorted the actual events claiming that there had simply been a misunderstanding, and vowed that XXAT would not do business with Quick Fitting's customers directly in the future.

28. On or about August 22, 2009, Quick Fitting and XXAT executed a further non-disclosure agreement (the "*August 2009 NDA*"), which modified the *June 2008 NDA* slightly, by strengthening its restrictive terms. A true and accurate copy of the *August 2009 NDA* is attached to this *Verified Complaint* as Exhibit D.

29. The *August 2009 NDA* added the specific restriction that XXAT was prohibited from dealing with any customer of Quick Fitting directly:

> Company may never contact, communicate or negotiate with any supplier, customer or prospect of Quick Fitting Inc, which been disclosed to Quick Fitting or made known to the Company by any communication from Quick Fitting; and this communication is proprietary to Quick Fitting and said proprietary information may not be used to compete with, defame or cause damage to Quick Fitting Inc. Further Company is required to keep all customer, prospect and supplier Information secret at all times and may not communicate with, or provide information to, any third party....

*August 2009 NDA*, paragraph 1(h).

30. The *August 2009 NDA* also specifically bound the "directors, officers, employees and agents" of XXAT to the terms of the agreement.

31. Over the ensuing months, Quick Fitting again received information that

XXAT had utilized Quick Fitting's confidential information concerning push-fit plumbing products that were the subject of the agreements between the parties, to contact and attempt to do business with one or more customers or prospective customers of Quick Fitting.

32. At approximately the same time, Quick Fitting began receiving complaints concerning failures of certain Quick Fitting products in the market. The products had been manufactured and supplied by XXAT. Quick Fitting ceased providing orders to XXAT and demanded that XXAT make repairs to the affected products and assist in paying for damages Quick Fitting had incurred.

33. In August, 2011, Mr. Xie met with Quick Fitting representatives in East Providence, Rhode Island, saying he wanted to reach agreement to rekindle the supply relationship between the companies.

34. In response to questions raised by Quick Fitting at the time, Mr. Xie denied that XXAT had or was attempting to do business with any customers or prospective customers of Quick Fitting other than the one that had been discovered by Quick Fitting earlier, which had already been dealt with between the parties.

35. Xie specifically denied that XXAT or he had attempted to do business with Mueller, HG Spec, BrassCraft, Nibco, Sioux Chief, Flair-it or Noble, current and/or prospective customers of Quick Fitting operating in North America and no mention was made of Rona Hardware.

36. On August 23, 2011, Quick Fitting and XXAT executed a further agreement, which is titled "License Agreement With Terms of Confidentiality, Non-Disclosure, and Non-Competition" (the "*August 2011 License and NDA*"), a true and accurate copy of which is attached to this *Verified Complaint* as Exhibit E.

37. Frank Xie executed the *August 2011 License and NDA* on behalf of XXAT, and did so in East Providence, Rhode Island.

38. The *August 2011 License and NDA* reiterated that XXAT, identified as "Supplier" therein, "shall use Confidential Information exclusively and only to the extent necessary for the Business purposes as outlined in this Agreement" and that XXAT:

> shall not use Confidential Information or Quick Fitting's intellectual property or know-how...to advertise, manufacturer, sell, distribute, import or export plumbing or pipe-connection products...similar to any Quick Fitting product;

*August 2011 License and NDA*, ¶¶ 2.1, 2.4.

39. The *August 2011 License and NDA* reiterated that XXAT was prohibited from competing with Quick Fitting in any way:

> Due to the nature of the Confidential Information and Supplier's unique access to it, Supplier agrees that it shall not, during the term of this Agreement or at any time thereafter, either directly or indirectly through others, compete with Quick Fitting in the design, manufacture, supply, sale, or distribution of push-fit connection valves, fittings, supply line or controls.

*August 2011 License and NDA*, ¶4.3.

40. The *August 2011 License and NDA* again specifically restricted XXAT from contact or communications with Quick Fitting customers or prospective customers:

> Supplier shall not, during the term of this Agreement and for a period of thirty-sixty (36) months after the termination of this Agreement, contact, communicate with, or negotiate or conduct business with any customer or prospective customer of Quick Fitting.

*August 2011 License and NDA*, ¶4.4.

41. The *August 2011 License and NDA* also contains a liquidated damages clause in the event that XXAT breached the above terms:

> Supplier acknowledges and agrees that any violation or breach of this Non-Competition section of this Agreement: (i) shall result in a contract penalty

- 8 -

against supplier in an amount not less than five-hundred-thousand dollars and zero cents ($500,000.00) ....

*August 2011 License and NDA*, ¶4.6.

42. Shortly after entering the *August 2011 License and NDA*, Quick Fitting learned that XXAT had communicated with representatives of Rona Hardware, a major Canadian hardware and home improvement retailer with more than 700 stores in Canada, and that XXAT had and was attempting to supply and sell push-fit plumbing products covered by the Quick Fitting agreements to Rona stores directly, violating Quick Fitting's proprietary and exclusive rights to sell its products to Rona Hardware. In doing so, XXAT was utilizing Quick Fitting's proprietary and confidential information, including pricing, and using the molds and tooling owned by Quick Fitting and covered by the *Mold Agreement* executed by the parties.

43. XXAT had full knowledge at the time that Quick Fitting was in the process of developing contractual terms with Rona to sell to Rona push-fit plumbing products under Quick Fitting's ProBite brand.

44. XXAT has also communicated with Noble, a major wholesale supplier of plumbing products, and is attempting to sell push-fit plumbing products to Noble in violation of the *August 2011 License and NDA* and earlier agreements, utilizing Quick Fitting's confidential and proprietary information and the molds and tooling paid for by Quick Fitting and covered by the 2008 *Mold Agreement*.

45. XXAT, at the direction and control of Xie, and through Xie, has utilized Quick Fitting's proprietary information including its customer information, pricing data, and its molds, covertly to compete with Quick Fitting for a host of its customers and prospective

customers, all in direct contravention of the agreements between the parties explicitly and unambiguously directing that XXAT may *not* do so.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS

46. Plaintiff repeats and realleges the allegations of each preceding paragraphs as if specifically set forth herein.

47. Quick Fitting's confidential information including but not limited to its design, construction, methods of manufacture, pricing, market strategy, and identification of customers and potential customers constitute trade secrets within the meaning of the Uniform Trade Secrets Act as adopted by Rhode Island law, R.I. Gen. Laws §6-41-1 et seq. (the "RI UTSA").

48. Quick Fitting disclosed such trade secrets, and others, to Xie and XXAT under conditions of confidentiality designed and sufficient to maintain their trade secret status.

49. Xie and XXAT received Quick Fitting's trade secrets under conditions of confidentiality, but appropriated them for their own use and benefit to the exclusion of Quick Fitting.

50. XXAT's actions constitute violations of the RI UTSA.

51. These violations were intentional, willful, and malicious within the meaning of the RI UTSA, entitling plaintiff to exemplary damages of up to twice its actual damages as proven at trial, and to an award of its attorneys' fees.

## COUNT II
## BREACH OF CONTRACT
### (Violations of Confidentiality, Non-Disclosure and Non-Competition Provisions)

52. Plaintiff repeats and realleges the allegations of each preceding paragraphs as if specifically set forth herein.

53. Xie and XXAT owed duties of confidentiality, non-disclosure, and non-competition to Quick Fitting as described and detailed in the *Mold Agreement*, the *June 2008 NDA*, the *2009 License Agreement*, the *August 2009 NDA*, and the *August 2011 License and NDA*.

54. The actions of Xie and XXAT in communicating with, attempting to do business with, and selling products to customers or prospective customers of Quick Fitting constitute breaches and violations of the confidentiality, non-disclosure, and non-competition provisions of the various written agreements in existence at the time of each such breach or violation.

55. Such breaches were done knowingly, willfully, and with malicious intent to undermine and harm the interests of Quick Fitting.

56. Quick Fitting has been harmed thereby, and XXAT's breaches are a direct and proximate cause of such harm.

## COUNT III
## BREACH OF CONTRACT
### (Defective Products)

57. Plaintiff repeats and realleges the allegations of each preceding paragraphs as if specifically set forth herein.

58. During 2010, Quick Fitting began receiving complaints from its retail customers and from contractors and consumers concerning the integrity of certain Quick

Fitting products that had been purchased.

59. In some cases, consumers had complained to Quick Fitting retail store customers, or to Quick Fitting directly, that certain Quick Fitting products had failed, causing water damage to structures and personal property, for which they held Quick Fitting responsible.

60. Quick Fitting investigated and determined that the failures had resulted from manufacturing defects that had occurred at XXAT's factory. XXAT had manufactured and supplied to Quick Fitting tens of thousands of pieces of push-fit products that failed to hold their grip due to a defective component.

61. Quick Fitting made repeated demands that XXAT replace tens of thousands of products that were defective in this manner.

62. Quick Fitting itself developed a repair protocol, designed tools to effect the repairs, and supplied specific instructions to XXAT as to how to make the repairs.

63. XXAT failed to replace the products and refused to make the repairs demanded by Quick Fitting or any other repairs to the defective products, and failed and refused to compensate Quick Fitting for the losses it sustained in effecting the repairs itself, in recalling and suspending shipments of the affected products for a period of several weeks, in paying for property damage claims, and in attempting to repair its reputation and the reputation of its products in the marketplace.

64. XXAT was required, by the express terms of the *2009 License Agreement,* to supply products that were manufactured to meet certain identified industry standards and to "immediately replace defective or non-compliant inventory and pay [Quick Fitting] the purchase price..." *2009 License Agreement,* ¶ 4(g).

65. XXAT otherwise owed a duty to Quick Fitting to supply working, functional, and merchantable product to Quick Fitting.

66. XXAT breached that duty, Quick Fitting has been harmed, and XXAT's breaches are a direct and proximate cause of such harm.

## COUNT IV
## INJUNCTIVE RELIEF

67. Plaintiff repeats and realleges the allegations of each preceding paragraphs as if specifically set forth herein.

68. XXAT's and Xie's conduct and actions as described herein were intentional, willful, malicious, and undertaken in bad faith.

69. XXAT's and Xie's conduct and actions have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to plaintiff's business, reputation, and good will, for which plaintiff has no adequate remedy at law.

70. By reason of the above, plaintiff is entitled to recover profits and damages from defendant in an amount to be determined at trial, in addition to its costs and reasonable attorneys' fees.

## COUNT V
## COMMON LAW UNFAIR COMPETITION

71. Plaintiff repeats and realleges the allegations of each preceding paragraphs as if specifically set forth herein.

72. There is implied in every contract in Rhode Island a covenant of good faith and fair dealing.

73. Each contract identified herein is a Rhode Island contract.

74. XXAT's and Xie's conduct and actions as set forth herein constitute unfair

competition, a breach of the covenant of good faith and fair dealing implied in every Rhode Island contract, and are in violation of plaintiff's common law rights.

75. XXAT's and Xie's conduct and actions are causing loss, damage and injury to plaintiff and to the purchasing public.

**WHEREFORE**, Quick Fitting, Inc. respectfully requests that this Court enter judgment in its favor and against defendants XXAT and Xie on all counts, as follows:

a. awarding Quick Fitting all damages sustained as a result of defendants' misappropriation and wrongful use of trade secrets;

b. doubling damages determined at trial under the Rhode Island Uniform trade Secrets Act, R.I. Gen. Laws §6-41-3(b);

c. awarding plaintiff its reasonable attorneys' fees pursuant to R.I. Gen. Laws §6-41-4(c) as such misappropriation was willful and malicious;

d. awarding Quick Fitting all damages sustained as a result of defendants' contractual breaches, including the contractual penalty payment of $500,000 as called for in the *August 2011 License and NDA;*

e. preliminarily and permanently enjoining XXAT and Xie, their agents, servants, employees, officers, directors, representatives, and all other persons in active concert or participation with any of them, from further wrongful conduct; and

f. Any other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims so triable.

### Verification

I, David B. Crompton, declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and accurate based on my own personal knowledge, or, where so indicated, that I believe such to be true upon information and belief.

_____
David B. Crompton, President
Quick Fitting, Inc.

Date: 11-12-11

Date: October 12, 2011

QUICK FITTING, INC.

By Its Attorneys,

_____
Thomas R. Noel, Esq. (#4239)
John R. Harrington, Esq. (#7173)
NOEL LAW
50 South Main Street
Providence, RI 02903
401-272-7400
401-621-5688 (Facsimile)
TNoel@LawNoel.com
JRHarrington@LawNoel.com