EXHIBIT E

### LICENSE AGREEMENT
### WITH TERMS OF CONFIDENTIALITY, NON-DISCLOSURE, AND NON-COMPETITION

This License Agreement With Terms of Confidentiality, Non-Disclosure, and Non-Competition Agreement (the "Agreement") is made and entered between Quick Fitting, Inc., a corporation organized and existing under the laws of the state of Rhode Island, United States of America, with a principal place of business at 750 Narragansett Park Drive, East Providence, Rhode Island ("Quick Fitting"), and Zhejiang Xingxin Ainte Copper Co, and all affiliates a China corporation, with its principal place of business at Valve Industry Zone, Longxi Town, Yuhuan County, Zhejiang, China (referred to herein as "Supplier"). Quick Fitting and Supplier shall be referred to herein as "Parties."

### RECITALS

WHEREAS, Quick Fitting is a leading designer, manufacturer, and supplier of push-fit connection valves, pipe fittings, supply lines and controls, and sells its products throughout the world;

WHEREAS, Quick Fitting is the sole and exclusive owner of valuable patent, trademark, copyright, trade secret, know-how, and other intellectual property rights concerning the design and manufacture of such products;

WHEREAS, Quick Fitting has the power and authority to grant to Supplier the right, privilege, and license to use Quick Fitting's intellectual property on or in connection with the manufacture and supply of certain products and component pieces for Quick Fitting;

WHEREAS, Supplier wishes to receive certain trade secret, confidential and proprietary information and other business information belonging to Quick Fitting (hereinafter collectively "Confidential Information"), exclusively for the purpose of providing cost estimates and business proposals for the manufacture and supply of certain products and component parts of products in the hope that Quick Fitting will purchase said products and components parts from Supplier (the "Business"); and

WHEREAS, Quick Fitting is willing to disclose the Confidential Information to Supplier only on the terms and conditions set forth herein, and Supplier is willing to receive and use the Confidential Information under this Agreement and to be governed strictly by the terms of this Agreement.

WHEREFOR, Quick Fitting and Supplier agree as follows:

### I.   General Terms

1.1     "Effective Date" shall mean the date on which this Agreement is fully executed by the Parties. This Agreement shall become binding on the Parties as of the Effective Date.

1.2     This Agreement shall supersede and replace the document titled Non-Disclosure Agreement, executed by the parties on or about August 22, 2009.

1.3     "Confidential Information" shall include all information provided by Quick Fitting to Supplier or any agent or Representative of Supplier (as defined herein), or learned or derived by Supplier as a result of the Business contemplated herein, whether before or after the date of this Agreement, in any form or format whatsoever whether oral, written or electronic or machine-readable, on or stored on or in any medium whatsoever, pertaining to Quick Fitting quick connection valves, fittings and controls, and to the design, manufacture, development, materials of construction, trade, technical, operational, management or other tactical or strategic planning information relative to product development, potential markets, customers, prospects, costs, and financial information and projections. Confidential Information shall also include the identities of all customers and prospective customers of Quick Fitting at any time, all identifying and contact information regarding the same, all customer lists, sales lists, sales histories, payment information, and all communications with customers or prospective customers of Quick Fitting at any time. Confidential Information shall also include all proprietary information, trade secret information, and know-how communicated to Supplier or

learned or derived by Supplier arising out of the Business contemplated herein or the use of Quick Fitting's intellectual property.

1.4     Confidential Information shall not include information that (a) is or becomes generally available to the public (other than as a result of a disclosure by Supplier or its Representatives in violation of this Agreement): (b) was available to the Supplier on a non-confidential basis prior to its disclosure by Quick Fitting or its Representatives; (c) becomes available to Supplier on a non-confidential basis from a person other than Quick Fitting or its Representatives; or (d) was independently developed or discovered by Supplier.

1.5     As used in this Agreement, the term "Representative" means, as to any person or entity, such person or entity's affiliates and its and their directors, officers, employees, agents, consultants, advisors (including, without limitation, counsel and accountants) and controlling persons.  As used in this Agreement, the term "person" shall be broadly interpreted to include, without limitation, any corporation, company, partnership, other entity or individual.

## II.   Treatment of Confidential Information

The disclosure of information by Quick Fitting is undertaken in strictest confidence and thus Supplier hereby unconditionally agrees that:

2.1     Supplier shall use Confidential Information exclusively and only to the extent necessary for the Business purposes as outlined in this Agreement;

2.2     Supplier shall disclose Confidential Information only to those employees and Representatives of Supplier having a need to know such Information in order to accomplish the Business purpose stated herein, and shall advise each such employee or Representative, before he or she receives access to any Confidential Information, of the obligations imposed upon him or her under this Agreement, and require each such employee to maintain those obligations;

2.3     Supplier shall not, directly or indirectly without the express written authority of Quick Fitting, disclose to or use for its benefit or for the benefit of any other person, corporation or other entity, any Confidential Information or any other proprietary, confidential or secret information pertaining to Quick Fitting or the business between Supplier and Quick Fitting, including the terms of this Agreement.  In the event that Supplier is required by law or directed by applicable legal authority having jurisdiction over it to disclose any Confidential Information, Supplier shall give written notice to Quick Fitting immediately upon learning of Supplier's obligation to make such disclosure;

2.4     Supplier shall not use Confidential Information or Quick Fitting's intellectual property or know-how, or any derivative thereof, to advertise, manufacturer, sell, distribute, import or export plumbing or pipe-connection products or any products similar to any Quick Fitting product; without the express written permission of Quick Fitting Inc;

2.5     Supplier shall safeguard and maintain the secret and confidential nature of the Confidential Information with at least the same degree of care and diligence used to maintain the confidentiality and integrity of its own confidential and trade secret information, but always to at least a reasonable degree of care;

2.6     Within fifteen (15) days following a request from Quick Fitting, Supplier shall return to Quick Fitting all copies of all Confidential Information, including all documentation, copies, notes, diagrams, computer memory media and other materials containing any portion of the Confidential Information, or confirm to Quick Fitting, in writing, the destruction of such materials;

2.7     Immediately upon any sale of Supplier or merger of Supplier with any third party, Supplier shall return to Quick Fitting all copies of all Confidential Information, including all documentation, copies, notes, diagrams, computer memory media and other materials containing any portion of the Confidential Information, or confirm to Quick Fitting, in writing, the destruction of such materials; and

CONFIDENTIAL                        Page 2 of 8                    Supplier Initial: _____

2.8     All Confidential Information shall for all time remain the sole property of Quick Fitting.

### III.  License Terms

3.1     Quick Fitting hereby grants to Supplier for the Term of this Agreement a limited, non-exclusive right and license to use the intellectual property identified on the attached Scheduled A (the "Property") solely and only to the extent necessary in connection with the manufacture and supply of certain products and component pieces to Quick Fitting.

3.2     Nothing in this Agreement shall preclude Quick Fitting from granting any other license or licenses for use of the Property or any other intellectual property of Quick Fitting to any person or entity at any time.

3.3     Supplier shall not grant any right or sublicense to any third party at any time.

3.4     Supplier acknowledges that the Property and all trademarks included therein have acquired secondary meaning and that Supplier's use of same, if any, including the good will therein, inures to the benefit of Quick Fitting.

### IV.  Terms of Non-Competition

4.1     Supplier shall not, during the term of this Agreement or at any time thereafter, either directly or indirectly through others, use any Confidential Information, the Property, or any proprietary information or trade secrets of Quick Fitting to compete with, defame, hinder, or cause harm to Quick Fitting.

4.2     Supplier shall not, during the term of this Agreement or at any time thereafter, directly or indirectly sell, or direct or authorize any sale, distribution, or shipment, of any product or component utilizing the Property or any Confidential Information, or arising out of or under this Agreement, to any person or entity except to Quick Fitting as specifically directed by Quick Fitting.

4.3     Due to the nature of the Confidential Information and Supplier's unique access to it, Supplier agrees that it shall not, during the term of this Agreement or at any time thereafter, either directly or indirectly through others, compete with Quick Fitting in the design, manufacture, supply, sale, or distribution of push-fit connection valves, fittings, supply line or controls.

4.4     In addition to the permanent prohibitions against using Quick Fitting's Confidential Information Supplier shall not, during the term of this Agreement and for a period of thirty-sixty (36) months after the termination of this Agreement, contact, communicate with, or negotiate or conduct business with any customer or prospective customer of Quick Fitting or any Representative of such customer or prospective customer (a "Prohibited Party"), or with any person or entity that Supplier or any of its Representatives knows or reasonably should know is a customer or prospective customer of Quick Fitting, regardless of the geographic location of such Prohibited Party or its business.

4.5     Should Supplier receive any communication or any attempted communication, whether oral, written, or electronic, from any Prohibited Party or Representative of a Prohibited Party during the term of this Agreement or during the thirty-sixty (36) month period following the termination of this Agreement, Supplier shall take no action with respect to such communication except to immediately provide Notice to Quick Fitting and forward such communication to Quick Fitting.

4.6     Liquidated Damages/Contract Penalty.  Supplier acknowledges and agrees that any violation or breach of this Non-Competition section of this Agreement: (i) shall result in a contract penalty against supplier in an amount not less than five-hundred-thousand dollars and zero cents ($500,000.00) (the "Contract Penalty"), payable to Quick Fitting within thirty (30) days after invoicing of this amount to Supplier; (ii) that Quick Fitting is authorized to withhold all or any portion of the Contract Penalty from any payments otherwise due to Supplier until such Contract Penalty is fully paid; and (iii) that the Contract Penalty amount shall be in addition to and shall not reduce the amount of actual damages Quick Fitting is able to prove for any breach or

CONFIDENTIAL                    Page 3 of 8                    Supplier Initial: _____

violation of this or any other section of this Agreement.

4.7     This Section IV "Terms of Non-Competition" of this Agreement shall survive the termination of the Agreement.

## V.   General Terms

5.1     Regardless of whether the parties enter a further agreement regarding the Business, the restrictive terms of this Agreement shall remain in full force and effect.

5.2     Regardless of whether this Agreement is provided in conjunction with a solicitation for bid from Quick Fitting Inc., Quick Fitting makes no representation that it will enter into a relationship; and is under no obligation to enter into any further agreement.

5.3     If either party hereto determines at any time that it does not wish to proceed with the Business contemplated herein, it will promptly advise the other party of that decision. Upon termination, each party shall, upon request, promptly return to the other party or destroy all copies of the other party's Confidential Information, however stored and on whatever media, in its possession or in the possession of any of its Representatives and will not retain any copies or other reproductions in whole or in part of such material. All other documents, memoranda, notes, summaries, analyses, extracts, compilations, studies or other material whatsoever prepared by it or any of its Representatives based on the Confidential Information shall be destroyed and such destruction shall, if requested, be certified in writing to the other party by an authorized officer supervising such destruction.

5.4     It is understood and agreed that Quick Fitting owns and shall retain all right, title, and interest in the Property as well as in any modifications or improvements made to the Property or products or components manufactured under this License, whether such modifications or improvements are accomplished by Quick Fitting or Supplier. Supplier hereby irrevocably assigns to Quick Fitting any and all rights in all products, improvements, modifications, plans, blueprints, designs, artwork and designs developed by Supplier related to or incorporating the Property. Supplier agrees to execute any and all documents reasonably requested by Quick Fitting to effect this provision.

5.5     It is understood and agreed that all models, molds, tooling, drawings, samples, images, color separations, negatives, positives, screens and any other materials provided by Quick Fitting are and shall remain the sole and exclusive property of Quick Fitting. Supplier shall return or transfer such materials to Quick Fitting upon request of Quick Fitting or upon termination or expiration of this Agreement.

5.6     Supplier acknowledges Quick Fitting's exclusive rights in the Property and, further, acknowledges that the Property and Quick Fitting's trademarks included therein are unique and original to Quick Fitting. Supplier shall not, at any time during or after the effective Term of the Agreement dispute or contest, directly or indirectly, Quick Fitting's exclusive right and title to the Property and/or Quick Fitting's trademarks or the validity thereof.

5.7     Infringements. Quick Fitting shall have the right, in its sole discretion, to prosecute lawsuits against third persons for infringement of the Licensed Product. Quick Fitting may, at any time and at its sole discretion, join any lawsuit in which Supplier is a party and which concerns any product or component supplied to Quick Fitting under this Agreement.

5.8     No Conflicts. Supplier represents and warrants that its full performance hereunder will not breach any obligation to any third party, that no other agreement or obligation restricts its performance hereunder, and that Supplier can and will perform all duties on its part to be performed without violating the rights of any other person or entity. Supplier certifies that it has not, and covenants that it will not, disclose or use during The Project any confidential information acquired as a result of any previous confidential relationship.

5.9     Compliance With Laws. Supplier shall undertake all measures necessary to ensure that its

performance under this Agreement complies in all respects with all applicable international, federal, provincial, and state laws, statutes, regulations, and local ordinances or other rules promulgated by governing authorities having jurisdiction over Supplier or the activities contemplated by this Agreement.

5.10    Supplier acknowledges that any breach of any part of this Agreement would cause immediate, immeasurable, and irreparable harm to Quick Fitting and, in addition to any other rights and remedies available to Quick Fitting at law or in equity, would be just cause for immediate preliminary and permanent injunctive relief against Supplier enjoining and restraining such breach or threatened or intended breach, would be just cause for an embargo on the importation of goods from Supplier, and would additionally entitle Quick Fitting to monetary damages for such breach.

5.11    This Agreement shall be governed by and construed in accordance with the laws of the State of Rhode Island and the United States of America applicable to Contracts executed in and to be performed in Rhode Island.

5.12    The Parties expressly agree that the United States District Court for the District of Rhode Island shall have sole and exclusive jurisdiction over any action or proceeding to enforce, for damages, or otherwise arising out of this Agreement. By execution of this Agreement, each Party irrevocably and unconditionally: (i) submits to the jurisdiction (both subject matter and personal) of the United States District Court for the District of Rhode Island in any action or proceeding commenced for the purpose of enforcing this Agreement or for damages; (ii) waives any objection it may now or hereafter have to the venue of legal proceeding arising out of this Agreement brought in such Court; and (iii) waives any claim that any action or proceeding arising out of this Agreement brought in the United States District Court for the District of Rhode Island has been brought in an inconvenient forum.

5.13    If any litigation or other legal proceeding relating to this Agreement occurs, the prevailing party shall be entitled to recover from the other party (in addition to any other relief awarded or granted) its reasonable costs and expenses, including attorney's fees, incurred in the proceeding.

5.14    Final judgment against Supplier in any such suit shall be conclusive and may be enforced in other jurisdictions by suit on the judgment, a certified or true copy of which shall be conclusive evidence of the fact and the amount of any indebtedness or liability of the Sellers or the Buyer therein described, or by appropriate proceedings under any applicable treaty or otherwise.

5.15    Notices. All notices, requests, demands, directives and other communications provided hereunder shall be in writing, delivered to the applicable Party at the address of such Party set forth below (or such other addresses duly provided in writing to the other Party) via first class mail, facsimile, courier service, by hand or by electronic means. Each such notice, document, request, demand, directive or other communication shall be effective upon delivery by any means. Notices shall be sent:

If to Quick Fitting:

Quick Fitting, Inc.
Mr. David B. Crompton
President and CEO
750 Narragansett Park Drive
East Providence, RI 02916 USA
Facsimile: 877-258-4826

If to Supplier:

Zhejiang Xingxin Ainte Copper Co. and all affiliates
Valve Industry Zone, Longxi Town

uhuan County, Zhejiang, China, 315000
Facsimile: 86-576-87491156

CONFIDENTIAL                Page 5 of 8                Supplier Initial: ____

5.16    Binding Effect. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement, whether by operation of law or otherwise. Supplier may not sell, assign, or transfer any right hereunder without the prior written consent of Quick Fitting.

5.17    QUICK FITTING MAKES NO REPRESENTATION OR WARRANTY, WHETHER WRITTEN OR ORAL, STATUTORY, EXPRESS OR IMPLIED, WITH RESPECT TO ANY CONFIDENTIAL INFORMATION THAT MAY BE PROVIDED HEREUNDER, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. QUICK FITTING SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHATSOEVER RESULTING FROM RECEIPT OR USE OF ANY CONFIDENTIAL INFORMATION BY SUPPLIER.

5.18    Construction. The general rule of construction for interpreting contracts providing that the provisions of a contract shall be construed against the Party preparing the contract is hereby waived by the Parties. Any ambiguity in the terms of this Agreement shall not be construed against the draftsman. Each Party acknowledges that it was represented by legal counsel in this matter who participated in the preparation of this Agreement, or it had the opportunity to retain such counsel to participate in the preparation of the Agreement but knowingly and voluntarily chose not to do so.

5.19    Amendments/Waivers. No provision of this Agreement may be terminated, amended, supplemented, waived or modified other than by an instrument in writing signed by the party against whom the enforcement of the termination, amendment, supplement, waiver or modification is sought. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar). No failure on the part of any party to exercise any right, power or privilege hereunder shall operate as a waiver thereof.

5.20    No Joint Venture. Nothing contained herein shall constitute this arrangement to be employment, a joint venture, or a partnership. This Agreement does not, and shall not be deemed to, make Quick Fitting or Supplier, the agent, legal representative, or partner of the other for any purpose whatsoever, and neither Quick Fitting not Supplier shall have the right or authority to assume or to create any obligation or responsibility whatsoever, express or implied, on behalf of or in the name of the other party, or to bind the other party in any respect whatsoever.

5.21    Severability. If any provision hereof is held invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the validity or operation of any other provision and such invalid provision shall be deemed to be severed from the Agreement.

5.22    Counterparts. This Agreement may be executed in counterparts, all of which, when taken together, shall constitute one agreement and be binding upon the Parties with the same force and effect as if all signatures had been entered on one document.

5.23    Imaged Signatures. This Agreement may be delivered to each Party by facsimile or by email (with the Agreement and signatures imaged in a standard format such as PDF or TIF) and such delivery shall be effective and binding. The parties acknowledge and agree that after execution and delivery by facsimile or email, additional copies of the Agreement may be circulated for signature so that each Party will ultimately retain a fully executed original. The circulation of additional copies for original signatures shall in no way diminish or affect the binding effect of the Agreement previously signed in counterparts and delivered by facsimile or email.

5.24    Authority to Execute. The undersigned individuals hereby warrant and represent that he/she has the full authority to execute and perform this Agreement on behalf of the entities for which he/she has signed, and that he/she is acting within the scope of his/her authority.

ASSENTED AND AGREED:

**Quick Fitting** ®

By:
Name: David B. Crompton
Title: President and CEO
Date: 8-23-2011

Zhejiang Xingxin Ainte Copper Co. and all affiliates

By:
Name: Frank Xu  (Witu Xu)
Title: General Manager
Date: 8-23-2-11

This agreement supercedes all other agreements and terms.

Terms of Sale

40% Deposit

40% Upon receipt of Bill of lading (copy)

20% Upon positive review of received products
Defective products will be replaced within
30 days by air freight at the expense of
the supplier.

CONFIDENTIAL                Page 7 of 8                Supplier Initial:

**SCHEDULE A**

to

**License Agreement**
**With Terms Of Confidentiality, Non-Disclosure, And Non-Competition**

dated _8-23-11_ by and between
Quick Fitting, Inc. and Zhejiang Xingxin Ainte Copper Co. and all affiliates.
The "Property" shall mean the following know-how, patents, trademarks and/or copyrights:

All Quick Fitting Trademarks, Copyrights, Service Marks;
All drawings, test criteria, results and performance testing, images and representations
    supplied by Quick Fitting or obtained due to or arising out of the working
    relationship with Quick Fitting;
All Quick Fitting U.S. & Foreign Patents (including, but not limited to)
**U.S. Patent Number** 11/807,072
Removal tool and method for push-fit fluid flow systems, U.S. Application
    # 20100066075
New Method of Push Fitting Connection Structure, **U.S. & Foreign Application #**
    **Unpublished**
Piping joint assembly system and method, U.S. Application # **20100066074**
Push-Fit Valve With Integrated Mounting Assembly, U.S. Application # **20090057601**
Push-Fit joint assembly and method, U.S. Application # **Unpublished**
Push-Fit Split Grip Ring Method for Connecting Tubular Members, U.S. Application #
    **Unpublished**

U.S. Registered Trademarks

Quick Fitting
ProBite
Copro
Copro Pure
Copper Lok
Push Grip
Push Fit
Perma Fit
Push Connect
Air Force Piping
Overbuilt, not Overpriced
Ever Grip
Fit Quick
Wolv Bite
Duo Seal
and all other trademarks utilized by Quick Fitting, whether registered or not.