**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND**

_____   )
                                  )
QUICKFITTING, INC.                )
                                  )
        *Plaintiff,*              )        CIVIL ACTION
                                  )        CASE NO. 1:11-cv-00463-L-DLM
    v.                            )
                                  )
ZHEJIANG XINGXIN AITE COPPER      )
MFG. CO., LTD. AND QUIFU XIE      )
                                  )
        *Defendants.*             )
                                  )
_____   )

## <u>AMENDED ANSWER AND COUNTERCLAIM</u>

Now return the Defendants, Zhejiang Xingxin Aite Copper Mfg. Co. Ltd. and Qifu Xie  and answer the allegations of the Plaintiff's Complaint as follows:

1.   The Defendants admit that the named Plaintiff has brought this instant action.  The Defendants deny that they have engaged in conduct amounting to misappropriation of trade secrets, breach of contract, and unfair competition.  The Defendants deny that they have and are wrongfully quoting and selling customers of the Plaintiff products that contain and were developed from Plaintiff's intellectual property in order to covertly compete with Plaintiff in breach of agreements by the parties.

2.   The Defendants admit that Quick Fitting, Inc. is a corporation organized under Rhode Island law

1

with its principal place of business at 750 Narragansett Drive, East Providence, RI.

3. The Defendants admit that Zhejiang Xingxin Aite Copper Mfg. Co. Ltd. is a corporate entity organized and existing under the laws of China, with a principal place of business at Valve Industry Zone, Longxi Town, Yuhuan, Zhejiang, China.

4. The Defendants have no knowledge of what Zhejiang Xingxin Aite Copper Mfg. Co. Ltd. is commonly known as in the United States.  To avoid confusion for the purposes of this case, the Defendants will adopt the Plaintiff's nickname of XXAT.

5. The Defendants agree that XXAT manufactures goods in China for export to the United States and elsewhere.

6. The Defendants deny that QieFu Xie is also known as Frank Xie and resides in China, but admit that QiFu Xie is also known as Frank Xie and resides in China. Defendants deny that Mr. Xie is the president of XXAT, but admit that he is the general manager.

7. The allegations of paragraph 6 constitute a legal conclusion, requiring no response from the Defendants.  To the extent that a response is required, the Defendants deny the same.

8. The Defendants admit that a citizen of this jurisdiction and a citizen of a foreign state are involved in this dispute and that the amount in controversy exceeds $75,000.

9. The Defendants admit that they have traveled in the district and conducted business in the district. The Defendants admit that venue is appropriate.

10. The Defendants are without sufficient information to admit or deny the allegation in Paragraph 10 that the Quick Fitting is an inventor, manufacturer and distributor of high quality plumbing products and calls upon the Plaintiff to prove the same.

11. The Defendants deny that the entirety of the Plaintiff's technology is unique.  The Defendants are without sufficient information to admit or deny the remaining allegations of paragraph 11 and call

upon Plaintiff to prove the same.

12. The Defendants are without sufficient information to admit or deny the allegations of paragraph 12 and call upon Plaintiff to prove the same.

13. The Defendants are without sufficient information to admit or deny the allegations of paragraph 13 and call upon Plaintiff to prove the same.

14. The Defendants are without sufficient information to admit or deny the allegations of paragraph 14 and call upon Plaintiff to prove the same.

15. The Defendants admit that in 2008, they began discussions with Quick Fitting by which the Defendants would manufacture and supply fittings to Quick Fitting.  The remaining allegations in paragraph 15 are denied and Defendants call upon Plaintiff to prove the same.

16. The Defendants admit that an agreement between Quick Fitting and the Defendants was executed on June 9, 2008.  The remaining allegations in paragraph 16 are denied and Defendants call upon Plaintiff to prove the same.

17. The Defendants admit the allegations in paragraph 17.

18. The Defendants admit the portion of paragraph 18 that is quoted from the agreement.  The remaining allegations in paragraph 18 are denied and Defendants call upon Plaintiff to prove the same.

19. The Defendants admit the portion of paragraph 19 that is quoted from the agreement.  The remaining allegations in paragraph 19 are denied and Defendants call upon Plaintiff to prove the same.

20. The Defendants are without sufficient information to admit or deny the allegations in Paragraph 20 and call upon Plaintiff to prove the same.

21. The Defendants are without sufficient information to admit or deny the allegations in Paragraph

21 and call upon Plaintiff to prove the same

22. The Defendants admit that an agreement was executed in December 2008 between Quick Fitting and XXAT and that the portions quoted in paragraph 22 are true quotes from the agreement, but deny the remaining allegations in paragraph 22 and call upon Plaintiff to prove the same.

23. The Defendants deny that an agreement was executed in April 2009 between Quick Fitting and XXAT but admit that the portions quoted in paragraph 23 are true quotes from the purported agreement.  The Defendants deny the remaining allegations in paragraph 23 and call upon Plaintiff to prove the same.

24. The Defendants admit the allegations in paragraph 24.

25. The Defendants admit that the Licensing Agreement contains terms, but deny the remaining allegations in paragraph 25 and call upon Plaintiff to prove the same.

26. The Defendants are without sufficient information to admit or deny whether Quick Fitting received information regarding XXAT's actions, but deny the remaining allegations in paragraph 26 and call upon Plaintiff to prove the same.

27. The Defendants deny the allegations made in paragraph 27 and call upon Plaintiff to prove the same.

28. The Defendants admit that an agreement was executed on August 22, 2009 between Quick Fitting and XXAT, but deny the remaining allegations in paragraph 28 and call upon Plaintiff to prove the same.

29. The Defendants admit that the portion of the agreement quoted in paragraph 29 is a true quote from the agreement, but deny the remaining allegations in paragraph 29 and call upon Plaintiff to prove the same.

30. The Defendants admit that the portion of the agreement quoted in paragraph 30 is a true quote

from the agreement, but deny the remaining allegations in paragraph 30 and call upon Plaintiff to prove the same.

31. The Defendants are without sufficient information to admit or deny whether Quick Fitting received information regarding XXAT's actions, but deny the remaining allegations and call upon Plaintiff to prove the same.

32. The Defendants deny the allegations made in Paragraph 32.

33. The Defendants admit that Mr. Xie traveled to Rhode Island in August 2011 to meet with Quick Fitting representatives to forge a closer relationship between Quick Fitting and XXAT.

34. The Defendants admit that Mr. Xie informed Quick Fitting that XXAT had not breached the agreement with Quick Fitting. The Defendants deny the remaining allegations and call upon Plaintiffs to prove the same.

35. The Defendants admit that Mr. Xie denied that XXAT had breached the agreement with Quick Fitting. The Defendants deny the remaining allegations and call upon Plaintiffs to prove the same.

36. The Defendants admit the allegations contained in paragraph 36.

37. The Defendants admit the allegations contained in paragraph 37.

38. The Defendants admit that the portions of the agreement quoted in paragraph 38 are true quotes from the agreement, but deny the remaining allegations in paragraph 38 and call upon Plaintiff to prove the same.

39. The Defendants admit that the portions of the agreement quoted in paragraph 39 are true quotes from the agreement, but deny the remaining allegations in paragraph 39 and call upon the Plaintiff to prove the same.

40. The Defendants admit that the portion of the agreement quoted in paragraph 40 is a true quote

from the agreement, but deny the remaining allegations in paragraph 40 and call upon Plaintiff to prove the same.

41. The Defendants admit that the portion of the agreement quoted in paragraph 41 is a true quote from the agreement, but deny the remaining allegations in paragraph 41 and call upon Plaintiff to prove the same.

42. The Defendants deny the allegations made in paragraph 42 in their entirety.

43. The Defendants deny the allegations made in paragraph 43 in their entirety.

44. XXAT admits that it communicated with Noble, but denies that the communication was in violation of any agreement with Quick Fitting.

45. XXAT denies the allegations made in paragraph 45 in their entirety.

<u>Count 1</u>

46. The Defendants' answers to the allegations set forth above are restated and incorporated herein.

47. The allegations of paragraph 47 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

48. The allegations of paragraph 48 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

49. The allegations of paragraph 49 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

50. The allegations of paragraph 50 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the

same.

51. The allegations of paragraph 51 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

<u>Count II</u>

52. The Defendants' answers to the allegations set forth above are restated and incorporated herein.

53. The allegations of paragraph 53 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

54. The allegations of paragraph 54 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

55. The allegations of paragraph 55 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

56. The allegations of paragraph 56 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

<u>Count III</u>

57. The Defendants' answers to the allegations set forth above are restated and incorporated herein.

58. The allegations of paragraph 58 constitute a conclusion of law, requiring no response from the

Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

59. The allegations of paragraph 59 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

60. The allegations of paragraph 60 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

61. The allegations of paragraph 61 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

62. The allegations of paragraph 62 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

63. The allegations of paragraph 63 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

64. The allegations of paragraph 64 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

65. The allegations of paragraph 65 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

66. The allegations of paragraph 66 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

Count IV

67. The Defendants' answers to the allegations set forth above are restated and incorporated herein.

68. The allegations of paragraph 68 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

69. The allegations of paragraph 69 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

70. The allegations of paragraph 70 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

Count V

71. The Defendants' answers to the allegations set forth above are restated and incorporated herein.

72. The allegations of paragraph 72 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

73. The allegations of paragraph 73 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

74. The allegations of paragraph 74 constitute a conclusion of law, requiring no response from the

Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

75. The allegations of paragraph 75 constitute a conclusion of law, requiring no response from the Defendants.  To the extent that these allegations require a response, the Defendants deny the same.

## **AMENDED AFFIRMATIVE DEFENSES**

### First Affirmative Defense

The Plaintiff's claims against the Defendants fail to state claims against Defendants upon which relief may be granted and therefore must be dismissed.

### Second Affirmative Defense

The Plaintiff is estopped from recovery against the Defendants due to its own conduct and actions, including, but not limited to, conduct in violation of the covenant of good faith and fair dealing and conduct which constitutes unfair and deceptive business practices, unjust enrichment, patent infringement and breach of contract.

### Third Affirmative Defense

By its own conduct and actions, the Plaintiff has waived its right to any recovery against the Defendants.

### Fourth Affirmative Defense

The Plaintiff's claims against the Defendants are barred due to the Plaintiff's fraudulent conduct

against them.   Specifically, the Plaintiff entered into a contract on August 10, 2011 with the sole

intention of binding the Defendant XXAT but had no intention of benefitting XXAT under the contract.

Fifth Affirmative Defense

The Plaintiff's claims are barred pursuant to the terms of any applicable license.

Sixth Affirmative Defense

The Defendants hereby give notice that they intend to rely upon such other and further defenses

as may become available or apparent during the discovery proceedings in the action and hereby

reserves the right to amend their Answer and Counterclaim and to assert any such further defense or

claim by appropriate motion.

**AMENDED COUNTERCLAIM**

1. By abruptly filing a lawsuit against XXAT, Quick Fitting is trying to sneak out of its

   obligation to pay XXAT $387,928.53 it owes, seize XXAT's existing customer base and

   grab the technology XXAT developed in China and that Quick Fitting has coveted for itself.

2. Defendant-in-counterclaim, Quick Fitting, Inc., is a corporation organized and existing

   under the law of the State of Rhode Island, with its sole place of business at 750

   Narragansett Drive, East Providence, Rhode Island.

3. Plaintiff-in-counterclaim Zhejiang Xingxin Aite Copper Mfg. Co. Ltd. ("XXAT") is a

   limited liability corporation organized and existing under the laws of China with a sole place

   of business at Valve Industry Zone, Longxi Town, Yuhuan, Zhejiang, China.

of business at Valve Industry Zone, Longxi Town, Yuhuan, Zhejiang, China.

4. XXAT is a company on the east coast of China near Shanghai with 360 workers.  Founded in 1984, XXAT specializes in plumbing and heating products, with a focus on various types of thermostatic radiator valves, manual radiator valves and other commercial valves, specialized copper and brass fittings, and bathroom and kitchen products.  It has designed hundreds of unique products for production in its factory.  XXAT's products allow fast and permanent connections to pipes in the plumbing and heating market, and have attracted top customers in Europe, Australia and North America.

5. Plaintiff-in-counterclaim Qi Fu "Frank" Xie is a citizen of China who resides in Beijing. Xie is a mechanical engineer with more than 13 years of experience in metal and pipe connections.  He holds several patents for his designs and is widely respected in the international plumbing and heating industry.  In his business dealings, Xie often relies on his perception of the integrity of the person and company he is dealing with and rarely relies on an attorney for advice.  He has a minority ownership in XXAT and must answer to the majority owners and the president of XXAT.

6. Because of its reputation for innovative and high quality products, XXAT had a variety of loyal customers in 2008, before it had established a relationship with Quick Fitting.  It did, however, have ongoing relationships with many of Quick Fitting's customers, including Mueller, BMI, Noble Trade and EZ-Flo.

7. After learning of XXAT in 2008, Quick Fitting began negotiations with XXAT.

8. At about the same time, XXAT obtained rights to a New Pattern of Fast Pipe Structure, China Intellectual Property Office Number 200820122097.3.   XXAT's fitting design uses

no seated part, so there is no need for soldering or welding and the fitting lasts much longer.

9.   Quick Fitting desired XXAT's product design and also wanted to develop some of XXAT's

patents in the United States.

10.   On February 17, 2009, XXAT and Quick Fitting executed a contract in which the two

companies would jointly develop a U.S. patent for XXAT's technology.  The agreement

states that Quick Fitting intended to "further [its] business relationship [with XXAT]

through joint ownership of certain patent and other intellectual property rights outside China

and the underlying" fast pipe connection structures that Xie had invented.

11.   The agreement acknowledged that XXAT had customers that Quick Fitting might desire to

do business with, and Quick Fitting provided XXAT with the assurance that it would "not

take issue or appeal with customers [XXAT] is handling" unless Quick Fitting first obtains

XXAT's consent.

**Quick Fitting Reneges on XXAT Contract, but Keeps Its Money and XXAT's Product**

12.   In 2010, XXAT sent Quick Fitting 1/4 –inch, ½-inch, 3/8 inch, ¾ inch and 1-inch Easy Grip

style fittings for use in Quick Fitting's products.  After accepting the products, Quick Fitting

became greatly in arrears to XXAT, in spite of the fact that the payment term of the contract

required that payment be made within seven days of the shipping date.

13.   On May 5, 2010, XXAT's Kevin Lei emailed David Crompton, the president of Quick

Fitting, to remind him that XXAT had shipped $534,291 worth of goods to Quick Fitting in

2010 in good faith, but had only received $41,239 in payment from Quick Fitting.  He

requested that Quick Fitting make good on its promise to pay for the goods it had contracted

for.

14. Quick Fitting did not respond to the request.  Evidently, Quick Fitting was still a satisfied customer, however, because in June 2010 it placed a major order with XXAT for the shipment of 7,300 pieces of product.  Quick Fitting did not pay for this shipment, either.  It was the last transaction between the companies.

15. In a June 29, 2010 email to Lei, Jordan Crompton, the senior account manager at Quick Fitting, explained that the company could not afford to pay XXAT what it owed but assured XXAT:  "We will be making payment very soon.  However, we are in a difficult cash position because all of the money that we invested in the large size fittings is tied up because we are unable to sell them and had to take back all of the product we sold since they are not approved.  This has put us in a difficult situation since we invested all of that cash into products that we cant [sic] sell, also we had to refund our customers on large product they already purchased."

16. Instead of paying XXAT, however, Quick Fitting devised a scheme to get around its obligations by pinning the blame for its troubles on XXAT.

17. On July 29, 2010, Quick Fitting's John Pires contacted XXAT to report that XXAT had shipped defective parts.  XXAT quickly analyzed the problem and worked to resolve the problem.

18. On September 23, 2010, Quick Fitting's David Crompton demanded that XXAT replace 24,800 Easy Grip and Pro Bite pieces because they had failed in Quick Fitting's product and caused thousands to be returned.  Crompton told Xie that Quick Fitting would scrap the pieces that XXAT had sent and ship them to XXAT.  For other pieces, Crompton said, Quick Fitting would pay to get them reworked in the U.S. Once Quick Fitting received the

14

pieces, Crompton assured Xie, Quick Fitting would pay up its debt.

19. Xie quickly owned up to XXAT's responsibility for some of the flaws in the1-inch product. Instead of Quick Fitting scrapping the product in the U.S. and reworking the remaining product, Xie requested that the entire product be returned to China, where it could be repaired at a relatively low cost.  The remaining parts – the ¼, 3/8 and ½-inch fittings – were all still good, however, and Quick Fitting used the parts successfully.  XXAT asked that Quick Fitting pay for those parts.

20. Quick Fitting ignored XXAT's request, however, and had the repair performed on its own at a much higher cost and scrapped the remaining product.

21. Quick Fitting's unilateral action cost XXAT more than $40,000.

22. Quick Fitting also ignored the parts XXAT shipped at Quick Fitting's request to remedy the problem.  And once again, Quick Fitting ignored XXAT's request for payment for its working parts.

23. In an email to Xie on February 11, 2011, Crompton acknowledged that Quick Fitting owed XXAT for its order of fittings and assured Xie he would wire the money.  Crompton was not good to his word, however, and the money was never sent.

24. In an email sent to Xie on August 23, 2011, Crompton admitted that XXAT had cost Quick Fitting no more than $80,000 in direct expenses and internal labor to deal with flaws in XXAT's product.  This time, however, he made no offer to pay XXAT for the parts Quick Fitting had accepted that it then resold at a profit.

25. Despite the good faith on XXAT's side, Quick Fitting has never held up its end of the contract.  To date, Quick Fitting still owes XXAT $387,928.53 plus interest.

**Quick Fitting Is Aware that Xie Is Not The Sole Decisionmaker at XXAT**

26. After Xie visited the Quick Fitting factory in Rhode Island, Quick Fitting's Michael Pappas emailed Xie on January 11, 2011 to ask whether the XXAT board had made a decision whether to release test data for certain of its fittings.

27. In an October 29, 2011 email from Crompton to Xie, Crompton acknowledged that he was aware that Xie was not the sole decisionmaker for the company

**All of XXAT's Contacts With Quick Fitting's Market Has Been Outside of XXAT's Relationship with Quick Fitting**

28. Quick Fitting has accused XXAT of breach of contract by attempting to steal its customers. But in an October 29, 2011 email from Crompton to Xie, Crompton told Xie that the agreement that Quick Fitting and XXAT signed on August 25, 2011 superseded all other contracts between the companies.  That contract, submitted to this Court as an exhibit to Quick Fitting's complaint, clearly states that "If Quick Fitting discontinues purchasing items from [XXAT], [XXAT] may compete in the U.S. with an alternative product." In a September 27, 2011 email from David Crompton to Xie, Crompton stated: "<u>Any</u> prior documents are superseded by the August, 2011 agreement in place, period." (emphasis extant), and that the 2009 agreement to co-develop a U.S. patent for XXAT's technology was now irrelevant.

29. Quick Fitting has not purchased an item from XXAT since May 2010, and the instant lawsuit constitutes constructive discharge of the contract.  As such, since the August 2011 contract supersedes all other agreements, XXAT is free to compete for Quick Fitting's customers, nor has it breached any contract with Quick Fitting in its relationships with

16

customers.

30. Quick Fitting is also aware that XXAT is a well-regarded company that conducts similar business independent of its relationship with Quick Fitting.

31. For instance, on April 16, 2008, Mueller Industries, of Memphis, Tenn., lodged a purchase order with XXAT, well before any relationship with Quick Fitting was established.

32. Similarly, a May 8, 2008 email from Flair-It to Xie demonstrates that XXAT was in communication well before it entered any agreement with Quick Fitting.

33. Despite Quick Fitting's assertion that XXAT made overtures to Rona through confidential information from Quick Fitting, an October 1, 2009 email from a Noble of Canada representative to Xie makes clear that Noble had recommended XXAT to Rona Hardware.

34. In December 2009, Sioux Chief contacted XXAT to inquire about purchasing its products. XXAT was unaware at the time that Quick Fitting was also a Sioux Chief supplier and, thus, none of Quick Fitting's information was used to develop a relationship with Sioux Chief.  At any rate, Sioux Chief did not purchase any products from XXAT.

35. XXAT also sold products to HG Specs, a Canadian plumbing manufacturer that is also a Quick Fitting customer.  But XXAT did not attempt to sell any products that were in competition with Quick Fitting's products, and the products that XXAT sold to HG Specs were entirely different from Quick Fitting's market.

36. In an October 29, 2011 email from Crompton to Xie, Crompton acknowledged that – despite its assertion in paragraph 35 of its Complaint - Quick Fitting knew that "you have never sold [Nibco] anything."

37. Its lengthy accusations notwithstanding, it is clear that Quick Fitting has engaged in

improper behavior of its own and has harmed XXAT.  There is no doubt that in June 2010, Quick Fitting attempted to poach one of XXAT's largest customers, Noble of Canada. Brahm J. Swirsky, a Noble representative, informed Xie in an email that Joe Keeney, a Quick Fitting representative, met with him in June 2010, even though, according to Swirsky, Noble already had a relationship with XXAT for more than a year, and had been a customer of XXAT for nine months.

38. This was during the period when Quick Fitting had promised in its February 17, 2009 contract with XXAT that it would not appeal to any of XXAT's customers without first getting XXAT's permission.

39. In fact, in a June 3, 2009 email from Swirsky to Xie, Swirsky states that he has contacted XXAT at his own volition in 2009 because of XXAT's reputation in the market.  In the later email in 2010, Swirsky stated that he had informed Quick Fitting that it was already doing business with XXAT, and that Noble and Rona had given XXAT the exclusive for their product in Canada.  Swirsky also recalled in a 2011 email to Xie that in Xie's communications with Noble, Xie had never mentioned Quick Fitting.

**Quick Fitting Employed A Ruse To Get Out Of Its Obligations Under the February 17, 2009 Contract**

40.  As discussed above, Quick Fitting and XXAT executed a contract on February 17, 2009 in which they agreed to seek a patent jointly in the U.S. for XXAT's innovation.

41. That contract obligated Quick Fitting to obtain XXAT's approval before it contacted any of

XXAT's customers or used its patent.

42. In August 2011, Quick Fitting's Crompton lured Xie to Quick Fitting's offices with the opportunity to renew their business relationship.

## Count I

### Breach of the Covenant of Good Faith and Fair Dealing

43. The Plaintiffs-in-Counterclaim restate and incorporate herein each of the above allegations.

44. XXAT and Quick Fitting entered into a series of valid contract from 2009 to August 25, 2011.

45. XXAT performed all or substantially all that was required of it to perform under the contract.

46. All conditions required for Quick Fitting's performance had occurred.

47. Quick Fitting unfairly interfered with XXAT's right to receive the benefits of its contracts.

48. XXAT was harmed as a result of Quick Fitting's conduct.

## Count II

### Abuse of Process v. Quick Fitting, Inc.

49. The Plaintiffs-in-Counterclaim restate and incorporate herein each of the above allegations.

50. The prosecution of this action by Quick Fitting, Inc. constitutes a willful use of the legal process for a malicious purpose, not justified by law.

51. The said conduct of Quick Fitting has caused XXAT and QiFu Xie undue expense, including attorneys' fees and has had the effect of damaging XXAT's viability as a business enterprise.

## Count III

### Breach of Contract

19

<u>Breach of Contract</u>

52.  The Plaintiffs-in-Counterclaim restate and incorporate herein each of the above allegations.

53.  Quick Fitting executed contracts with XXAT, in which Quick Fitting agreed that it would

pay XXAT within seven days of shipping of the product.

54.  Quick Fitting acknowledges that it owes XXAT for the product it received that was

merchantable.

55.  Quick Fitting did not honor the contract and, in fact, Quick Fitting is in arrears to XXAT by

$387,928.53.

56.  By failing to pay for the goods shipped in good faith, Quick Fitting is in breach of contract to

XXAT.

57.  Quick Fitting knowingly, willfully and repeatedly refused to meet its obligations under

contract to pay for the goods it has received.

58.  XXAT has suffered damages as a result of Quick Fitting's failure to meet its obligations

under contract.

Count IV

<u>Unjust Enrichment</u>

59.  The Plaintiffs-in-Counterclaim restate and incorporate herein each of the above allegations.

60.  Quick Fitting executed a series of valid contracts with XXAT, in which Quick Fitting agreed

to pay within seven days XXAT for parts XXAT shipped.

61.  In accordance with the contracts and in good faith, XXAT shipped Quick Fitting

$387,928.53 worth of merchantable product.

62.  Quick Fitting accepted the product and used it in its own products, which it then sold at a

profit.

profit.

63. Quick Fitting retained for itself the money it owed XXAT.

64. As a result, Quick Fitting has unjustly enriched itself at the expense of XXAT.


Count V

Conversion

65. The Plaintiffs-in-Counterclaim restate and incorporate herein each of the above allegations.

66. Quick Fitting is in possession of XXAT's property and, despite repeated demands, will not

    return its property.

67. XXAT has suffered damages as a result of Quick Fitting's conversion of its property.

Count VI

Declaratory Judgment

68. The Plaintiffs-in-Counterclaim restate and incorporate herein each of the above allegations.

69. Based upon the foregoing, the Plaintiffs-in-Counterclaim seek the following declaratory

    judgment:

    a.  That the April 1, 2009 agreement is invalid because it was not executed by XXAT.

    b.  That Quick Fitting has discontinued purchasing from XXAT.

    c.  That XXAT has not materially breached any contract with Quick Fitting.

Count VII

Common Law Unfair Competition

70. The Plaintiffs-in-Counterclaim restate and incorporate herein each of the above allegations.

71. Under Rhode Island law, every contract carries with it a promise to act in good faith and fair

dealing.

72. Quick Fitting has asserted that all of the contracts made with XXAT are Rhode Island contracts.

73. Quick Fitting's actions as described above constitute unfair competition, a breach of the promise of good faith and fair dealing and a violation of XXAT's common law rights.

74. Quick Fitting's actions have knowingly caused loss and injury to XXAT.

WHEREFORE, the Plaintiffs-in-Counterclaim, Zhejiang Xingxin Aite Copper Mfg. Co., Ltd. and QiFu Xie, pray that judgment enter as follows:

1. That judgment enter in its favor and that it be awarded damages on each of the above counts;

2. That it be awarded attorneys' fees and multiple damages as allowed by law;

3. That it be awarded its costs and expenses, including reasonable attorneys' fees; and

3. That it be awarded its costs and expenses, including reasonable attorneys' fees; and

4. That it be granted such further relief as this Court deems just.

Respectfully submitted,

     /s/Joseph P. Quinn

, RI                          Joseph Quinn (RI#      )
21, 2011                      120 Wayland Avenue
                              Providence, RI  02906
                              (401) 751-2000
                              jquin@quinlawllc.com

ssachusetts                       /s/Timothy Cornell
21, 2011                      Timothy Cornell  (BBO#654412)
                              Perry, Krumsiek & Jack LLP
                              101 Arch Street
                              Boston, MA 02110
                              (617) 720-4300
                              tcornell@pkjlaw.com
                              *For Defendants XXAT and QiFu Xie*

                              *Admitted Pro Hac Vice*

23

## **CERTIFICATION OF SERVICE**

I certify that a true and correct copy of this document has been filed electronically through ECF, that it will be available for viewing and downloading electronically, and that service will be made to Plaintiff's Counsel through the ECF system on November 21, 2011.

Respectfully submitted,

_____/s/Joseph P. Quinn_____